UNITED STATES BANKRUPTCY COURT
DISTRICT OF VERMONT

Filed & Entered
On Docket
December 23, 2010

In re:

    Darcy F. Belding and
    Susan Belding,                                            Chapter 7 Case
                  Debtors.                           # 10-10908

*Appearances:*    *Carolyn L. Adams, Esq.*              *Jay C. Abramson, Esq.*
                          *Wells River, Vermont*                 *St. Johnsbury, Vermont*
                          *For the Debtors*                          *For the Creditor*

**MEMORANDUM OF DECISION
GRANTING DEBTORS' MOTION TO AVOID JUDICIAL LIEN,
DENYING CREDITOR'S OBJECTION TO MOTION,
AND DENYING CREDITOR'S OBJECTION TO DEBTORS' CLAIM OF HOMESTEAD EXEMPTION**

The Debtors seek to avoid the lien of Nurenberg Holdings, LLC (the "Creditor") on real property they occupy only in the summer and claim as their homestead. The Creditor asserts that the Debtors are not entitled to claim this property as their homestead because they live most of the year in Florida, and therefore the Debtors are precluded from avoiding its lien on this property. For the reasons set forth below, the Court finds that the Creditor has not met its burden of proof and, based upon the record before it, the Debtors' claim of a homestead exemption in this property is not improper. Accordingly, the Court grants the Debtors' motion and overrules both the Creditor's objection to the motion to avoid lien and the Creditor's objection to the Debtors' claim of homestead exemption.

JURISDICTION

This Court has jurisdiction over these contested matters pursuant to 28 U.S.C. §§ 157 and 1334 and declares them to be core proceedings pursuant to 28 U.S.C. § 157(B)(2)(B) and (K).

PROCEDURAL HISTORY

The Debtors filed this chapter 7 case on July 2, 2010. Approximately three weeks later, on July 22, 2010, the Debtors filed a motion to avoid the judicial lien of Nurenberg Holdings, LLC, on the ground that the lien impaired their homestead exemption, pursuant to 11 U.S.C § 522(f)[1] (doc. # 8).[2]

---

[1] All statutory citations refer to Title 11 of the United States Code (the "Bankruptcy Code") unless otherwise indicated.

[2] The Court held a hearing on the Debtors' motion on September 13, 2010, at which the Debtors failed to appear, so the motion was denied without prejudice. The Debtors re-filed the same motion later in the day on September 14, 2010 (doc. # 13). The Creditor likewise re-filed its opposition (doc. # 17) raising the same arguments it had interposed to the first motion.

The basis of the Debtors' motion was that they owned real property located at 36 Fosters Grove North in Westmore, Vermont (the "Property"), they claimed the Property as their homestead, the Property had a fair market value of $115,000 (based upon "a recent realtor's comparative market analysis"), the balance due on the mortgage against the Property was approximately $94,000, and the Creditor's judicial lien, with a balance due of approximately $67,000, therefore impaired the Debtors' homestead exemption. The Creditor filed opposition to the Debtors' motion presenting three arguments.  First, the Creditor asserted that the Debtors were precluded from seeking avoidance of its lien because the Debtors had not claimed the Property as exempt in Schedule C to their bankruptcy petition.  Second, the Creditor argued that the Debtors had undervalued the Property at $115,000 since the Property was lakefront property on Lake Willoughby, and the Creditor asserted that the realtor's market analysis (which was later filed in the record at doc. # 20) was not adequate evidence of the fair market value of the Property.  Third, the Creditor argued that the Debtors' primary residence appeared to be in Florida, and consequently the Debtors were not entitled to claim real property in Vermont as their homestead.

The Court held an evidentiary hearing on the Debtors' motion and the Creditor's objections on December 21, 2010, at which counsel presented legal argument and Susan Belding testified.  The Court took the matter under advisement.

PERTINENT FACTS

Based upon the Debtor's uncontroverted and credible testimony, the Court makes the following findings of fact:

1. Mrs. Belding inherited the Property in 1995; it has been in her family approximately 49–50 years.

2. The Property is 50–60 years old, includes lake front property and a boat house, and the photos marked Respondent's Exhibits A and B generally reflect the current condition of the Property (except that they do not show the entire parcel).

3. Before moving to Vermont, Mrs. Belding lived in Florida and had a house and homestead in Florida.

4. The Debtors resided in Vermont from July 2007 until October 2008, during which time they operated The Big Deli in three Vermont locations, including Lyndonville, Vermont (as indicated on their Statement of Financial Affairs).

5. In the fall of 2008, the Debtors moved to Florida because Mrs. Belding was able to find work there as a school teacher.

6. Although the Property is not winterized (and has never been used as a year-round residence), the Debtors lived in the Property one winter (2007–08), with no running water and with kerosene heating.

7. The Debtors have lived in Florida, in a rented apartment, for the last two and a half years.

8. The Debtors continue to spend summers in Vermont, moving from Florida to Vermont as soon as the school year ends (typically around the first of June), and when in Vermont they live at the

Property.

9. The Debtors do not own real property in Florida.

10. The Debtors consider the Property to be their homestead property.

11. The town in which the Property is located has assessed the Property at $244,000; the Debtors believe the assessment is based upon an appraisal that is eight years old; they have told the town officials that they believe this assessment is too high; they have not filed any formal grievance or objection to the assessment with the town.

12. The Debtors file income tax returns in Vermont each year and file as Vermont residents.

13. Mrs. Belding believes the value of the Property to be $115,000, based upon the recent drop in property values generally, and the listings and sales of comparable properties in the Lake Willoughby region in particular (especially one property she described, which has been listed for sale for over one year, is now listed for $125,000, and is not yet the subject of a purchase contract).

14. The Property is in need of significant repairs. The roof is over 30 years old, the boathouse is listing and needs to be replaced, the wooden cribbing that ensures that the lawn will not fall into the lake needs to be replaced (which will cost approximately $15,000–$20,000), and the Property needs new septic, heat, and water systems.

15. The Debtors have filed a declaration of homestead for the Property in Vermont each year for approximately five years.

16. Mrs. Belding is not registered to vote; she does not vote in Florida.

## DISCUSSION

Pursuant to Bankruptcy Rule 4003(c),[3] the Creditor has the burden of proof as to its objection to the Debtors' homestead exemption. The Creditor also has the burden of proof with respect to its objection to the Debtors' motion to avoid lien. See, e.g., In re Herd, 176 B.R. 312, 314 (Bankr. D. Conn. 1994) (finding that the creditor's objection to the debtor's § 522(f) motion was identical to its objection to the debtor's claim of homestead exemption, and therefore that the creditor carried the burden of proof on both matters).

This Court has addressed the allowance of homestead exemptions under several fact patterns. See, e.g., In re Detko, 290 B.R. 494, 499–500 (Bankr. D. Vt. 2003) (collecting cases). The analysis of this issue begins with the recognition that there is a strong policy basis for construing exemptions generously in favor of debtors, and then focuses on whether the objecting party has proven that the debtor has abandoned his or her homestead:

> 'In Vermont, as in most (if not all) jurisdictions, exemption statutes are considered to be remedial in nature and thus ought to receive a liberal construction in

---

[3] Bankruptcy Rule 4003(c) provides that "[i]n any hearing under this rule, the objecting party has the burden of proving that the exemptions are not properly claimed. After hearing on notice, the court shall determine the issues presented by the objections." Fed. R. Bankr. P. 4003(c).

3

favor of debtors.' <u>Delaney v. Obuchowski (In re Delaney)</u>, 268 B.R. 57 (D. Vt. 2001) (citing <u>Parrotte v. Sensenich (In re Parrotte)</u>, 22 F.3d 472, 474 (2d Cir. 1994); <u>In re Rule</u>, 38 B.R. 37, 41 (Bankr. D. Vt. 1983); <u>In re McQueen</u>, 21 B.R. 736, 738 (Bankr. D. Vt. 1982)); <u>Jewett v. Guyer</u>, 38 Vt. 209 (1865) ("The homestead exemption has been repeatedly recognized in this court [the Vermont Supreme Court] as being humane in its character, and the statute should receive a liberal construction in view of the objects aimed at by it."). The purpose of Vermont's homestead exemption is 'to preserve a home for the family; to protect the family as a unit whether it consists of a husband and wife or any other natural person.' <u>In re Evans</u>, 51 B.R. 47, 50 (Bankr. D. Vt. 1985) (citing <u>In re D'Avignon</u>, 34 B.R. 790, 793 (Bankr. D. Vt. 1981), aff'd, 34 B.R. 796, 800 (D. Vt. 1982)).

'Once a property has become a homestead, it can lose its character only through death, alienation, or abandonment. Typically, the homestead is abandoned when the debtor either sells the property or establishes a new homestead.' <u>In re Brent</u>, 68 B.R. 893, 896 (Bankr. D. Vt. 1987) (internal citation omitted). However, abandonment can be shown when the "homestead is no longer used as a homestead;" at that point, the "homestead has ceased to exist." <u>Id.</u> (citing <u>In re White</u>, 18 B.R. 95, 97 (Bankr. D. Vt. 1982); <u>Cushman v. Davis</u>, 79 Vt. 111, 118–20, 64 A. 456 (1906)). It is irrelevant whether another homestead has been acquired. <u>Id.</u>

Conversely, 'if a debtor intends to return to the homestead, then the homestead has not been abandoned;' and during the debtor's absence, the homestead remains exempt. <u>Id.</u> (citing <u>West River v. Gale</u>, 42 Vt. 27, 33–34 (1869)). Thus, the relevant consideration in determining abandonment of the homestead is 'whether the debtor has an intention to return.' <u>Id.</u> (citing <u>In re White</u>, 18 B.R. at 97); <u>In re Wolff</u>, 108 Vt. 54, 57, 182 A. 187 (1936); <u>Thorp v. Wilbur</u>, 71 Vt. 266, 270, 44 A. 339 (1899); <u>Whiteman v. Field</u>, 53 Vt. 554, 556 (1881)). This Court (Conrad, J.) has instructed: 'A debtor's intent to maintain or abandon the homestead must be determined in relation to the surrounding exigencies.' <u>Id.</u> (citing <u>In re Neis</u>, 723 F.2d 584, 590 (7th Cir. 1983)).

<u>Detko</u>, 290 B.R. at 499.

As in <u>Detko</u>, the facts in the instant case do not clearly fall at either end of the continuum as to abandonment of a homestead property. It is clear that the Debtors perceived the Property as their homestead prior to moving to Florida in 2008, and equally clear that on the date they filed this bankruptcy case they were only "summering" at the Property. However, the fact that they did not reside in the Property full-time at the time they filed this bankruptcy case is not determinative of whether it is proper for them to declare the Property as their homestead. <u>See In re Millsap</u>, 122 B.R. 577, 580 (Bankr. D. Idaho 1991) (finding that the debtor could claim as exempt a cabin he stayed at only periodically, where he intended the cabin to be his residence but spent the largest share of his time at an apartment in another city to be closer to his work place). The critical inquiry is whether the Creditor has demonstrated that the Debtors intended to abandon the Property as their homestead. <u>See Detko</u>, 290 B.R. at 498–99.

Here, Mrs. Belding testified that she considered the Property her homestead. She indicated that

4

the motivation for moving out of the Property and to Florida was to find work. While this type of move may be reasonably characterized as a voluntary relocation, see Detko, 290 B.R. at 501, the facts here suggest that the Debtors made this move to address economic needs.

The Court finds the following facts probative of the Debtors' intent to maintain the Property as their homestead: (1) the Debtors continued to declare the Property as their homestead for tax purposes; (2) the Debtors did not register to vote in Florida; (3) the Debtors consistently have filed, and continue to file, their income tax returns as residents of Vermont; (4) the Debtors wish to remain Vermont residents; (5) the Property is the only real property the Debtors own; (6) the Debtors pay property tax on the Property; (7) the Debtors reside in the Property whenever they are living in Vermont; and (8) the Debtors return to live in Vermont each summer. The Creditor produced no evidence to rebut any of these facts and offered no case law to support the conclusion that the Debtors have abandoned their homestead.[4] The Court notes that neither party elicited testimony from Mrs. Belding concerning the Debtors' future intent to retain or abandon the Property.

Likewise, the Creditor did not present any evidence to rebut the reliability or soundness of the Mrs. Belding's valuation of the Property. See Crabbe v. Veve Assocs., 150 Vt. 53, 58, 549 A.2d 1045, 1049 (Vt. 1988) ("The owner of real property is competent to testify concerning its value") (citing 12 V.S.A. § 1604; Shortle v. Central Vt. Pub. Serv. Corp., 1345 Vt. 486, 489, 365 A.2d 256, 258 (Vt. 1976)). Accordingly, the Court also overrules the valuation aspect of the Creditor's objection.[5]

Lastly, the Court overrules that argument in the Creditor's objection focused on the Debtors' failure to claim the Property as exempt on their Schedule C. The Debtors' attorney explained at the hearing that she did not feel it was appropriate to list the Property as exempt until a determination was made in the instant contested matter and pointed out that she had unequivocally declared the Debtors' intent to exempt this asset in her motion to avoid lien. Though it would not have been the least bit improper for the Debtors to include the Property on Schedule C while this matter was pending, it finds counsel's explanation credible and reasonable. Additionally, there can be no question that the Creditor was on notice of the Debtors' intent to claim the Property exempt as their homestead. The failure to declare an asset as exempt does not preclude relief under § 522. See In re Yamamoto, 21 B.R. 58, 59

---

[4] The Court is not determining that it would be appropriate to allow a homestead declaration in all cases where property is only occupied for such a short period of time each year. Here, the Court reaches its conclusion based primarily upon the Creditor's failure to meet its burden of proof.

[5] Although the appraisal filed by the Debtors is in the record (doc. # 20) to show what the Debtors relied upon in reaching their conclusion of value, it was not admitted into evidence and the Court did not rely upon it in reaching its determination that the Property has a fair market value of $115,000; the Court relied exclusively upon Mrs. Belding's testimony in determining the Property's fair market value.

5

(Bankr. D. Haw. 1982) (finding the fact that the debtors did not claim garnished wages as exemption to be irrelevant to application of § 522(f), as the debtor may avoid the fixing of a judicial lien to the extent that the lien impairs an exemption that the debtor is entitled to exempt); see also In re Johnson, 53 B.R. 919, 923, n.7 (Bankr. N.D. Ill. 1985) (noting that the debtor's failure to list garnished wages as exempt did not preclude his § 522(f) claim as long as the wages could have been claimed as exempt); In re Caruthers, 87 B.R. 723, 730, n.8 (Bankr. N.D. Ga. 1988) (noting case authority that a debtor's failure to claim an item as exempt is irrelevant to the application of § 522(f)).

CONCLUSION

For the reasons set forth above, the Court finds that the Creditor has not met its burden of proof on the issues it has raised in its objections, that the Debtors may claim the Property as their homestead, that the fair market value of the Property is $115,000, and that the Debtors have established cause to avoid the Creditor's judicial lien under § 522(f). Therefore, the Debtors' motion to avoid lien is granted, and the Creditor's objection to the motion to avoid lien and the Creditors' objection to the Debtors' claim of exemption are overruled.

This memorandum constitutes the Court's findings of fact and conclusions of law.

December 23, 2010
Rutland, Vermont

Colleen A. Brown
United States Bankruptcy Judge